UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.

**GARAGESOCIAL, INC.,**
a corporation,

      Plaintiff,

vs.

**THE HAGERTY GROUP, LLC**,
a limited liability company,
**MEMBER HUBS HOLDINGS LLC,**
a limited liability company, and
**MEMBER HUBS MIAMI LLC**
a limited liability company,

      Defendants.

_____/

## VERIFIED COMPLAINT

Plaintiff, Garagesocial, Inc. ("Plaintiff"), brings this Complaint against the Defendants, The Hagerty Group, LLC ("Hagerty"), Member Hubs Holdings LLC ("Member Hubs Holding"), and Member Hubs Miami LLC ("Member Hubs Miami")(collectively, "Defendants") and makes the following allegations:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is a Delaware Corporation with its principal place of business located at 399 Boylston Street, Floor 6, Boston, MA 02116 USA.

1

2.  Plaintiff conducts business in the Southern District of Florida including Miami-Dade County.

3.  Hagerty is a Delaware limited liability company with an address of 121 Driver's Edge, Traverse City, Michigan 49684.

4.  Member Hubs Holding, LLC ("Member Hubs Holding"), is a Delaware limited liability company with an address of 121 Driver's Edge, Traverse City, Michigan 49684.

5.  Member Hubs Miami, LLC ("Member Hubs Miami"), is a Delaware limited liability company with an address of 121 Driver's Edge, Traverse City, Michigan 49684.

6.  Hagerty, Member Hubs Holding, and Member Hubs Miami are related or sister companies.

7.  Hagerty has granted a license to Member Hubs Holding and Member Hubs Miami to use the mark and trade name HAGERTY GARAGE + SOCIAL.

8.  Member Hubs Holding has operated as HAGERTY GARAGE + SOCIAL offering vehicle storage facilities and social club memberships in Miami, Florida; Delray Beach, Florida; and Van Nuys, California.

9.  Member Hub Miami operates under the trade name HAGERTY GARAGE + SOCIAL in Florida including offering vehicle storage facilities and social club memberships in Miami.

10.     Member Hub Miami registered the fictitious name HAGERTY GARAGE + SOCIAL on May 1, 2020, and renewed said fictitious name on April 29, 2025.

11.     Hagerty exercises control and authorizes the advertising and rendering of the club services and vehicle storage services offered and rendered under HAGERTY GARAGE + SOCIAL mark by Member Hubs Holding and Member Hubs Miami throughout the United States including the locations in Miami, Florida and advertising targeting Florida customers.

12.     Hagerty owns and operates the website garageandsocial.com where it promotes the HAGERTY GARAGE + SOCIAL location in Miami offering services of vehicle storage and social club membership under said mark.

13.     Defendants conduct business in Miami-Dade County including offering and rendering club services promoting the interests of motor vehicle collectors and providing vehicle storage using the infringing GARAGE + SOCIAL and HAGERTY GARAGE + SOCIAL marks.

14.     Defendants operate physical GARAGE + SOCIAL facilities nationwide, including a location in Miami (355 NE 71st St, Miami, FL 33138) and previously a location in Delray Beach (777 S Congress Ave, Delray Beach, FL 33445) where they have rendered infringing services, hosted events, offered club memberships, and promoted the GARAGE + SOCIAL mark to Florida consumers.

15.     Defendants have acted in concert to place the infringing services in the stream of commerce, knowing Florida would be the likely destination of the

services and location of the customers to whom the services were rendered, and their conduct and connections with Florida were such that they should reasonably have anticipated being brought into court in Florida.

16. This is an action for federal mark infringement under 15 U.S.C. §1114, false designation of origin under 15 U.S.C. §1125(a)(1)(A), cybersquatting under 15 U.S.C. §1125(d); and the supplemental state causes of action of common law trademark infringement, unfair competition, and violation of Florida's Deceptive and Unfair Trade Practices Act (Fla. Stat. §§ 501.201-501-2101).

17. Jurisdiction of this Court arises under 28 U.S.C. § 1331, 28 U.S.C. § 1338, and under the doctrine of supplemental jurisdiction over state claims arising from a common nucleus of operative facts.

18. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and (c) because Defendants do business in this District and substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL ALLEGATIONS

### Plaintiff's Trademark Rights

19. Plaintiff has established a well-known and successful online car enthusiast community.

20. Plaintiff is the owner of the valid, incontestable federally registered mark GARAGESOCIAL ("Plaintiff's Mark" or "GARAGESOCIAL mark") in connection with: providing an on-line forum for users to share vehicle-related

4

information; providing an online forum allowing users to share and compare vehicle insurance information with others; providing an on-line forum for users to comment on vehicles and vehicle dealerships in International Class 038; and providing a social networking website for automobile enthusiasts featuring technology that allows users to interact based on user vehicle information and access a computer database including user profiles and user vehicle information in International Class 042 (collectively, "Plaintiff's Services"). *See* Exhibit 1, a true and correct copy of the registration certificate for Plaintiff's Mark (Registration No. 4,898,901), which was issued by the United States Patent and Trademark Office on February 9, 2016.

21.     Plaintiff has continuously used the GARAGESOCIAL mark in commerce throughout the United States (including Florida), since at least as early as March 2014 in connection with Plaintiff's Services.

22.     Plaintiff's Services are, and have been, offered under the GARAGESOCIAL mark throughout the United States via its website www.garagesocial.com (the "Plaintiff's Website") where its forum and social networking platform is hosted. See Exhibit 2, screenshots of Plaintiff's Website.

23.     Plaintiff's Services have been extensively advertised under the GARAGESOCIAL mark including through social media (Instagram @garagesocial since September 13, 2013 and TikTok since July 28, 2022), online video marketing campaigns, and trade shows such as the SEMA Show, Boston Auto Show, and South by Southwest.

24.     Plaintiff has acquired protectable statutory and common law rights in and to the GARAGESOCIAL mark through Plaintiff's substantial, exclusive, and continuous use and promotion of Plaintiff's Services under the mark,

25.     Since 2014, Plaintiff has fostered an automotive enthusiast community centered around Plaintiff's Mark and has developed valuable goodwill associated with Plaintiff's Mark.

<strong><u>Defendants' Infringing Acts</u></strong>

26.     On March 20, 2020, Hagerty filed for the mark HAGERTY GARAGE + SOCIAL with the United States Patent and Trademark Office (USPTO) in connection with club services, namely, promoting the interests of motor vehicle collectors and providing vehicle storage facilities, namely, providing vehicle parking space and vehicle storage space.

27.     Hagerty is the owner of the U.S. Trademark Registration No. 6,487,271 for the mark HAGERTY GARAGE + SOCIAL in connection with club services, namely, promoting the interests of motor vehicle collectors and providing vehicle storage facilities, namely, providing vehicle parking space and vehicle storage space. See Exhibit 3, copy of the official Certificate of Registration.

28.     In its mark application, Hagerty alleged it commenced use in commerce of the HAGERTY GARAGE + SOCIAL mark on March 05, 2020.

29.     In the Statement of Use filed with the U.S. Patent and Trademark Office, Hagerty submitted specimens, under penalty of perjury, of its purported use

of the mark HAGERTY GARAGE + SOCIAL which it described as "two screenshots from Applicant's website" with a URL of "www.garageandsocial.com" that depict the promotion of club services and vehicle storage services under the HAGERTY GARAGE + SOCIAL mark including locations in Miami and Delray, Florida. See Exhibit 4, corresponding to said Statement of Use.

30.     Hagerty owns and controls the website www.garageandsocial.com (the "Infringing Website"). The website offers a variety of services related to the automotive industry including cars for sale, an exclusive social membership, social events, test drives of unique car for members and car enthusiasts, and garage storage for cars under the marks GARAGE + SOCIAL and HAGERTY GARAGE + SOCIAL. See Exhibit 5, screenshots depicting advertising of Infringing Marks; and Exhibit 6, Website's Terms of Use stating the website is operated by The Hagerty Group, LLC

31.     Through the Infringing Website, Defendants promote their HAGERTY GARAGE + SOCIAL vehicle storage and club locations in Miami, Florida; Van Nuys, California; and Toronto, Ontario.

32.     Under the "Miami Pricing" webpage of the Infringing Website, Defendants offers a GARAGE + SOCIAL "social membership" with the description: "Even if you don't have a vehicle to store, you'll still want to join us at the ultimate hangout for automotive enthusiasts. That's why we offer a Social

Membership – all the social perks, without the storage." See Exhibit 7, screenshot of said webpage.

33.     Defendants do not solely use the mark HAGERTY GARAGE + SOCIAL, they also use the mark GARAGE + SOCIAL (without the term Hagerty).

34.     For example, Defendants' website domain name does not include the term Hagerty and the website itself states:

- "From a calendar full of unique social events to full-service maintenance and detailing, Garage + Social covers all aspects of collection management, as well as providing a space to celebrate car culture every day."

- "Think of Garage + Social as your clubhouse. Stop by, grab a coffee, admire some cars and hang out with fellow automotive enthusiasts."

- "Every Garage + Social member will be automatically enrolled in Hagerty Drivers Club too."

- "Garage + Social routinely hosts industry experts to speak about topics like vehicle care, performance, automotive history and more."

See Exhibit 8, screenshot of said webpage.

35.     As another example, Defendants' Instagram account handles do not include the term Hagerty and various posts promote the GARAGE + SOCIAL mark alone such as:

- "Sign up for storage or a social only membership and be a part of the next gathering at a Garage + Social near you!" Dated February 25, 2023.

- "If you could take any car from our Garage + Social locations for a

dream cruise, where would you go?" Dated April 24, 2023.

- "If you're looking to elevate your automotive car and enjoyment, find more information on Garage+Social." Dated November 1, 2023.

- "The table is set tonight at Garage + Social for 250 for St. Andrews's School Steaksman Dinner Annual fundraiser at our Garage+Social in Delray Beach, FL." Dated November 9, 2023.

- "There's much more to offer than just car storage here at Garage + Social. We want to help facilitate all the needs you have to make it a one stop shop." Dated January 30, 2023.

- "Garage+Social members were treated to an exclusive Ride and Drive experience @garageandsocial_vannuys in Los Angeles, CA by @velocityrestorations… For more information to join Garage+Social." Dated June 6, 2024.

See Exhibit 9, compilation of the above Instagram posts.

36.     Defendants advertise, market, promote, provide, and otherwise offer  club services promoting the interests of motor vehicle collectors, vehicle storage services, and online automotive enthusiast-related services (the "Infringing Services") under the confusingly similar marks "HAGERTY GARAGE + SOCIAL" and "GARAGE + SOCIAL" (collectively, the "Infringing Marks,"). See above Exhibits; see also Exhibit 10, corresponding to a PR Newswire article with news provided by Hagerty on its expansion into South Florida with its Miami location while using both  HAGERTY GARAGE + SOCIAL and GARAGE + SOCIAL to identify its services throughout the article.

37.     Defendants advertise and market the Infringing Marks in connection

with the Infringing Services on www.garageandsocial.com and social media sites like Facebook and Instagram.

38. Defendants have advertised GARAGE + SOCIAL on Instagram for their locations in Miami (@garageandsocial_miami) and Delray Beach (@garageandsocial_delraybeach), which are operated by Member Hub Holding and Member Hub Miami under Hagerty's control.

39. Defendants' parent company Hagerty Inc. has described (in the 2022 10-K Annual Report filed with the SEC) the dual digital and physical nature of its platform for the HAGERTY GARAGE + SOCIAL mark: "Through our diverse Membership offerings, including HDC and Hagerty Garage + Social, we deploy an ecosystem of engagement, including both physical (through events and social functions) and digital platforms (through media content, social media engagement, market news and valuation data) that can result in numerous touchpoints with Members each year."

40. Defendants represent themselves as a unified brand on the Infringing Website, social media pages, and marketing material.

41. The similarity of the Defendant's Infringing Marks, Infringing Website, and Infringing Services to the Plaintiff's Mark and services mislead, deceive, and confuse both suspecting and unsuspecting customers, by creating a false association that Defendants' services are affiliated with, approved by, or otherwise associated with Plaintiff.

42.     Plaintiff possesses senior mark rights that have priority over the Defendants' Infringing Marks. The Defendants started using the Infringing Marks in connection with the Infringing Services on or around March 05, 2020, where the Plaintiff's use of the GARAGE SOCIAL Mark commenced in 2014.

43.     Defendants use of Infringing Marks in connection with the Infringing Services is a willful and intentional attempt to trade on and exploit the goodwill and commercial success that the Plaintiff has built up in Plaintiff's Mark. This utilization by the Defendants is an attempt to overtake the Plaintiff's success as a preeminent and well-known car enthusiast provider and online community.

44.     Defendants use of the Infringing Marks in connection with the Infringing Services have caused actual confusion among consumers because prospective and existing consumers, and others viewing Defendants' Infringing Services during preliminary research, the point of sale, or any point in the ordinary channels of trade and commerce, are likely to confuse Plaintiff's Mark and with Defendants Infringing Marks concerning source, affiliation, association, and sponsorship.

45.     For example, on April 19, 2024, Plaintiff received an email from potential customer Jurgen Bauer of TECHART North America LLC that was intended for Defendants. Mr. Bauer was interested in coordinating a meetup and round table discussion of potential and existing automobile customers and he wrote, "We would be super grateful if we could hold the meeting at Garage Social Miami,

and if you might be able to help us identify and contact two to three potential participants from your members." See Exhibit 11, corresponding to said email.

46. In another example, on April 24, 2024, Plaintiff received an email from potential customer Kayla Rella of Fast Enterprises, LLC that was intended for Defendants. Ms. Rella stated, "My boss is looking for a place he can store one of his vehicles and was guided in the direction of your business…" See Exhibit 12, corresponding to said email.

47. Given the close similarity between Plaintiff and Defendants' marks, consumers who attempt to patronize HAGERTY GARAGE + SOCIAL inquire about the suspected association between the two entities. Further, Defendant's business customers regularly inquire with Plaintiff, through their website and have even gone so far as to send personally identifying information to Plaintiff under the mistaken belief that they are associated with Defendants.

48. By causing actual confusion and continuing to cause a likelihood of further confusion, mistake, and deception, and because Plaintiff cannot control the quality of the services offered by Defendants, Plaintiff and Plaintiff's Mark are irreparable harmed including the goodwill symbolized by the mark and the reputation for quality that they embody.

49. On, June 7, 2022, Plaintiff sent a cease-and-desist letter to Hagerty and on June 14, 2022, Hagerty's counsel sent a response to Plaintiff's letter denying any likelihood of confusion.

50.     Despite having actual notice of Plaintiff's trademark rights, Defendants have willfully continued to use the Infringing Marks in connection with the Infringing Services demonstrating a deliberate intent to trade off the goodwill of Plaintiff's Mark.

## COUNT I
## <u>FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)</u>
*(Against all Defendants)*

51.     Plaintiff realleges the allegations in paragraph 1 through 50, inclusive.

52.     This is a claim for federal mark infringement under Section 32 of the Lanham Act (15 U.S.C. § 1114).

53.     Defendants' unauthorized use in commerce of the Infringing Marks as alleged in this Complaint is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services and is likely to cause consumers to believe, contrary to fact, that Defendants' services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff.

54.     Defendants' conduct therefore constitutes service mark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

55.     Upon information and belief, Defendants have committed the foregoing acts of infringement with full knowledge of Plaintiff's prior rights in the

GARAGESOCIAL Mark and with the willful intent to cause confusion and trade on Plaintiff's goodwill.

56.    Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

57.    WHEREFORE, Plaintiff respectfully requests that this Court grant injunctive relief, cancellation of U.S. Trademark Registration No. 6,487,271, and an award of actual damages, accounting and disgorgement of Defendant's profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest, and any other relief the Court deems just and proper.

## COUNT II
## VIOLATION OF SECTION 43(a) OF THE LANHAM ACT
## (15 U.S.C. § 1125(a)(1)(A))
*(Against all Defendants)*

58.    Plaintiff realleges the allegations in paragraph 1 through 50, inclusive.

59.    This is a claim for false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act (15 U.S.C. § (a)(1)(A)).

60.    Defendants' unauthorized use in commerce of the Infringing Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or

affiliation of the Infringing Services, and is likely to cause consumers to believe, contrary to fact, that Defendants' services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff.

61.    Defendants' unauthorized use in commerce of the Infringing Mark as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

62.    Upon information and belief, Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff.

63.    Defendants' conduct as alleged herein constitutes unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

64.    Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

65.    WHEREFORE, Plaintiff respectfully requests this Honorable Court to grant the remedies provided under Sections 34 and 35 of the Lanham Act (15 USC 1116 and 1117) including injunctive relief, cancellation of U.S. Trademark

Registration No. 6,487,271, actual damages, an accounting and disgorgement of Defendants' profits, and any other relief the Court deems just and proper.

## COUNT III
### FLORIDA COMMON LAW MARK INFRINGEMENT
*(Against all Defendants)*

66.     Plaintiff realleges the allegations in paragraph 1 through 50, inclusive.

67.     Defendants' above referenced conduct constitutes mark infringement in violation of the common law of the State of Florida.

68.     The use and advertising of the Infringing Marks by Defendants is likely to cause confusion or mistake among purchasers as to the source of the Infringing Services with those of Plaintiff.

69.     Plaintiff has used in U.S. commerce and in Florida Plaintiff Mark for Plaintiff's Services prior to Defendants' adoption and use of the Infringing Marks in U.S. commerce and in Florida.

70.     Defendants' deliberate and willful use and advertising of the Infringing Marks to identify the same, or related, services is likely to cause confusion or mistake among purchasers as to the source and sponsorship of the goods and services and such acts of said Defendants constitutes common law infringement of Plaintiff's Marks.

71.     WHEREFORE, Plaintiff respectfully requests this Honorable Court to grant injunctive relief, compensatory damages and punitive damages, accounting and profits, and any other relief the Court deems just and proper.

## COUNT IV
## COMMON LAW UNFAIR COMPETITION
*(Against all Defendants)*

72.     Plaintiff realleges the allegations in paragraph 1 through 50, inclusive.

73.     Defendants' above referenced conduct constitutes unfair competition in violation of the common law of the State of Florida.

74.     Plaintiff is active in the field of the online car enthusiast community and adopted Plaintiff's Mark in connection with Plaintiff's Services prior to Defendants' adoption of the Infringing Marks, and has continuously used the Plaintiff's Mark in Florida and throughout the United States.

75.     The use and advertising of the Infringing Marks by Defendants is likely to cause confusion or mistake among purchasers as to the source of the goods and services with those of Plaintiff.

76.     Defendants' deliberate and willful use and advertising of Infringing Marks to identify the same, or related, goods and services is likely to cause confusion

or mistake among purchasers as to the source and sponsorship of the goods and services and such acts of said Defendants constitutes unfair competition.

77.     WHEREFORE, Plaintiff respectfully requests this Honorable Court to grant injunctive relief, compensatory damages and punitive damages, accounting and lost profits, and any other relief the Court deems just and proper.

## COUNT V
## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
*(Against all Defendants)*

78.     Plaintiff realleges the allegations in paragraph 1 through 50, inclusive.

79.     This is a claim for violation of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), Sections 501.201-501-2101 of the Florida Statutes.

80.     Defendants' conduct as alleged herein occurred in the conduct of trade and/or commerce.

81.     Defendants engaged in deceptive and unfair acts by engaging in trademark infringement by using confusingly similar marks for highly related services.

82.     Defendants' infringing and unfair activity is likely to mislead consumers acting reasonably in the circumstances to the consumer's detriment. Defendants' conduct has had, and will continue to have, an adverse effect on Plaintiff and on members of the general public. As a direct and proximate result of Defendants'

unfair trade practices, members of the general public are likely to mistakenly believe that Defendants' businesses, and the services provided by Defendants, are approved or endorsed by, or otherwise provided by Plaintiff.

83.     Defendants' unlawful conduct as set forth in this Complaint has been and continues to be willful, deliberate, unfair, and in bad faith.

84.     Plaintiff has been damaged by Defendants' unfair practices because Plaintiff and Defendants are competitors.

85.     As a direct and proximate result of Defendants' unfair, unconscionable, and deceptive acts and practices, Plaintiff has sustained injury and damages to the goodwill associated with Plaintiff's Mark and will continue to suffer irreparable harm unless Defendants are enjoined as no adequate remedy exists.

86.     WHEREFORE, Plaintiff requests judgment against Defendants including the entry of a permanent injunction, together with costs of suit, and reasonable attorney's fees pursuant to Fla. Stat. §501.2105, and such other and further relief as the court may deem proper.

## COUNT VI
### CYBERSQUATTING (15 U.S.C. § 1125(d))
*(Against all Defendants)*

87.     Plaintiff realleges the allegations set forth in paragraphs 1 through 50, inclusive.

88.     This is a claim for cybersquatting under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

89. Plaintiff owns all rights to Plaintiff's Mark in connection with Plaintiff's Services.

90. Plaintiff's Mark is presumptively distinctive as it has been federally registered on the Principal Register of the United States since 2016 and is now incontestable.

91. After Plaintiff's Mark was already distinctive and even registered, Defendants registered and used the domain name www.garageandsocial.com (the "Domain Name"), which is confusingly similar to Plaintiff's Mark.

92. Defendants' Domain Name is confusingly similar as it is merely adds an "and" between the two words comprising Plaintiff's mark GARAGESOCIAL and thus does not serve to create a different commercial impression as that of Plaintiff's Mark.

93. Defendants registered and used the Domain Name with an intent to profit from its confusing similarity to Plaintiff's Mark. Among other things, upon information and belief:

a. Defendants registered the Domain Name, despite knowing that Defendants have no rights in any name or mark and was not known by any name that was referenced or reflected in the Domain Name;

b. Defendants made no bona fide, non-infringing commercial use, or fair non-commercial use of the Domain Name; and

c.    Defendants intended to divert consumers looking for Plaintiff's Services online to Defendant's website by exploiting the confusing similarity of the Domain Name and the Plaintiff's Mark for Defendants' commercial gain.

94.    Defendants' conduct is directly and proximately causing substantial, immediate, and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to damage Plaintiff unless enjoined by this court. Plaintiff has no adequate remedy at law.

95.    WHEREFORE, Plaintiff requests judgment against Defendants together with the following:

a.  injunctive relief pursuant to 15 U.S.C. §§ 1116 and 1125(d)(1)(C), including, the transfer of the Domain Name to Plaintiff or cancellation of Defendants' registration of the Domain Name;

b.  Plaintiff's actual damages and Defendant's profits, enhanced as the court deems appropriate and equitable, in amounts to be proven at trial, pursuant to 15 U.S.C. § 1117(a), or alternatively, maximum statutory damages for the Domain Name pursuant to 15 U.S.C. § 1117(d); and

c.  reasonable attorneys' fees and costs, together with prejudgment and post-judgment interest.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: April 7, 2026            Respectfully submitted,

*/s/ Christian Sanchelima*
Christian Sanchelima, Esq.
Florida Bar No. 107751
Email: chris@sanchelima.com
Liany Estevez, Esq.
Florida Bar No. 1024902
Email: estevez@sanchelima.com
Sanchelima & Associates, P.A.
235 S.W. Le Jeune Road
Miami, Florida 33134
Telephone: (305) 447-1617
Facsimile: (305) 445-8484
*Attorneys for Plaintiff*

22

## VERIFICATION

I, Maxime Rassi, declare as follows:

I am the president of Garagesocial Inc. and I am authorized to make this verification on its behalf.

I have read the foregoing VERIFIED COMPLAINT and I am familiar with its contents. The matters stated therein are true to the best of my knowledge, information, and belief.

Executed on February 20 , 2026 in Boston, Massachusetts.

I declare under penalty of perjury that the foregoing is true and correct.

Maxime Rassi
President

23